# United States Court of Appeals
# for the Federal Circuit

---

**ROBERT MANKES,**

*Plaintiff-Appellant*

**v.**

**VIVID SEATS LTD., FANDANGO, LLC,**

*Defendants-Appellees*

---

2015-1500, 2015-1501

---

Appeals from the United States District Court for the Eastern District of North Carolina in Nos. 5:13-cv-00717-FL, 5:13-cv-00716-FL, Judge Louise Wood Flanagan.

-------------------------------------------------------------------------

**ROBERT MANKES,**

*Plaintiff-Appellee*

**v.**

**VIVID SEATS LTD.,**

*Defendant-Appellant*

---

2015-1909

---

Appeal from the United States District Court for the Eastern District of North Carolina in No. 5:13-cv-00717-FL, Judge Louise Wood Flanagan.

———————————

Decided: April 22, 2016

———————————

ANTHONY J. BILLER, Coats & Bennett, PLLC, Cary, NC, argued for plaintiff-appellant and plaintiff-appellee Robert Mankes. Also represented by DAVID E. BENNETT.

RICHARD THOMAS MATTHEWS, Williams Mullen, PC, Raleigh, NC, argued for defendant-appellee and defendant-appellant Vivid Seats Ltd. Also represented by ANDREW ROBERT SHORES; JOSEPH RAY POPE, Richmond, VA.

SHARON DAVIS, Rothwell, Figg, Ernst & Manbeck, P.C., Washington, DC, argued for defendant-appellee Fandango, LLC. Also represented by STEVEN M. LIEBERMAN.

KEVIN J. CULLIGAN, Goodwin Procter LLP, New York, NY, for amicus curiae Askeladden, L.L.C. Also represented by JOHN P. HANISH; BRIAN TIMOTHY BURGESS, Washington, DC.

———————————

Before TARANTO, SCHALL, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Robert Mankes owns U.S. Patent No. 6,477,503, which describes and claims methods for managing a reservation system that divides inventory between a local server and a remote Internet server. In October 2013, Mr. Mankes sued Vivid Seats Ltd. and Fandango, LLC in the Eastern District of North Carolina, alleging that their

operation of Internet-based reservation systems, in conjunction with the operation of local reservation systems by movie theaters and other entertainment venues, infringes the '503 patent. Because it is undisputed that no one person performs all of the steps of the method claims, Mr. Mankes's case depends on establishing what has been called "divided infringement."

When Mr. Mankes filed his complaints, the law relating to divided infringement was in the midst of a multiyear process of active judicial reconsideration, including by this court sitting en banc and by the Supreme Court. This court had granted en banc review to address the standards for direct-infringement liability for divided infringement but, in its decision, had left existing direct-infringement standards in place without reconsidering them, while providing an independent inducement basis for divided-infringement liability. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc) (*Akamai II*). By mid-2014, however, the Supreme Court had reversed *Akamai II*, held that divided-infringement liability of the sort at issue here requires some person to be liable for direct infringement under 35 U.S.C. § 271(a), and remanded for possible reconsideration of direct-infringement standards by this court. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2120 (2014) (*Limelight*).

In early 2015, the district court in the present cases, applying the law on direct-infringement liability as it then stood, concluded that Mr. Mankes's allegations are insufficient to establish direct infringement under § 271(a), and on that basis the court granted judgments on the pleadings for Vivid Seats and Fandango. When Vivid Seats thereafter sought attorney's fees against Mr. Mankes under 35 U.S.C. § 285, the court denied the request, finding the case not to be exceptional, a prerequisite to a fee award under § 285. Mr. Mankes has appealed

the merits judgments against him, and Vivid Seats has appealed the denial of fees.

During the briefing on the merits appeal here, the legal standards applied by the district court were first reinforced, then revised, by further decisions of this court in the Akamai-Limelight case. In *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 786 F.3d 899 (Fed. Cir. 2015) (*Akamai III*), a panel of this court, on remand from the Supreme Court, rejected direct-infringement liability for Limelight—as had the initial panel in the case in 2010, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1318–22 (Fed. Cir. 2010) (*Akamai I*), and the en banc court in 2012, *Akamai II*, 692 F.3d at 1307, 1318–19. The *Akamai III* panel reasoned that Limelight did not direct or control its customers' performance of claim steps, that its customers were not agents for Limelight, and that Limelight and its customers did not together constitute a joint enterprise (whose members can be charged with each other's acts in the enterprise). 786 F.3d at 914–15.

Three months later, however, the en banc court vacated *Akamai III* and decided *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc) (*Akamai IV*), *cert. denied*, 2016 WL 442440 (U.S. Apr. 18, 2016). The en banc court changed the result in the Akamai-Limelight case, now ruling against Limelight and for Akamai. *Id.* at 1025. The court did so by broadening the circumstances in which others' acts may be attributed to an accused infringer to support direct-infringement liability for divided infringement, relaxing the tighter constraints on such attribution reflected in our earlier precedents and in the three previous rulings for Limelight on direct infringement. *See Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362–63 (Fed. Cir. 2013); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329–30 (Fed. Cir. 2008); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380–82 (Fed. Cir. 2007). The en banc court concluded that attribution is

proper in a joint-enterprise setting, and it also articulated a standard that permits liability "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai IV*, 797 F.3d at 1023. The court added: "In the future, other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor. Going forward, principles of attribution are to be considered in the context of the particular facts presented." *Id.* And the court stated: "To the extent our prior cases formed the predicate for [*Akamai III*], those decisions are also overruled." *Id.* at 1023 n.3.

We need not say how much broadening occurred in *Akamai IV*. In the present cases, the district court's rulings and the arguments of Fandango and Vivid Seats to the district court were squarely based on the earlier, narrower standard. We vacate the judgments on the pleadings against Mr. Mankes and remand for further proceedings in light of *Akamai IV*.

We affirm the denial of attorney's fees to Vivid Seats. Not only is Vivid Seats no longer a prevailing party (given our vacatur of the judgment in its favor), but we readily conclude that the district court did not abuse its discretion in deeming the case not to be exceptional even under the state of the law before *Akamai IV*. Mr. Mankes rested his case on reasonable arguments for adjustment of legal standards that this court had already granted en banc review to consider in *Akamai II* and that remained in play, as indicated by *Akamai II*'s postponing reconsideration of those standards, by *Limelight*'s remand, and, ultimately, by *Akamai IV*'s adoption of broadened standards. In these circumstances, the district court did not err in refusing to deem unreasonable Mr. Mankes's pursuit of this case to date.

BACKGROUND

The '503 patent, entitled "Active Reservation System," recognizes that, to serve a national market, vendors have begun selling their goods and services both through the Internet and at their physical locations. '503 patent, col. 1, lines 31–37.[1] To do so, the patent says, vendors have typically divided their inventory, allocating a portion to the physical site and ceding control of the remaining inventory to the remote Internet site. *Id.*, col. 1, lines 38–47. But when the inventory is split, "neither [site] ha[s] contemporaneous information on the overall state of the local inventory," which may result in underselling when one site has exhausted its allocation but the other still has available inventory, or may require the vendor to undertake the costly task of reallocating its inventory between the sites. *Id.*, col. 1, lines 43–67.

The specification describes means of controlling the entire inventory from a local site. The local site maintains the total inventory of available goods and services and designates pricing. *Id.*, col. 3, lines 24–27. It communicates what portion of the inventory is available to an Internet server, which makes that inventory accessible for purchase by consumers online. *Id.*, col. 3, lines 27–32. When a sale is requested over the Internet, the Internet site contacts the local site, which confirms the sale and updates the total inventory. *Id.*, col. 3, lines 32–38. The adjusted inventory is then transmitted to the Internet site, along with a confirmation of the sale, which is forwarded to the consumer. *Id.*, col. 3, lines 38–42. In this way, any time a sale is made, whether at the local or Internet site, the local site can keep an up-to-date account

---

[1] The patent also refers to telephone reservation systems, but the claims all involve the Internet, and we limit our discussion to Internet systems.

of its total inventory and communicate that information to both sites. *Id.*, col. 3, lines 16–19.

Claim 1 is illustrative, stating:

1. A method for operating an Internet based active reservation system for the purchase of goods and services, comprising:

(a) providing an owner event server located at and operated by a local event owner having an available inventory of goods and services at a local site;

(b) providing an active reservation server located at and operated by user remote from said local site, said active reservation server accepting only data from said owner event server and formatting said data for viewing by an Internet-based consumer;

(c) allocating said available inventory by only said owner event server at all times between local inventory and Internet inventory;

(d) adjusting said available inventory by only said event owner at said owner event server at all times based on purchases of goods and services at said local event site;

(e) communicating said allocated Internet inventory only to said active reservation server;

(f) receiving purchase requests for goods and services in said Internet inventory at said active reservation server from said Internet-based consumer;

(g) communicating said purchase requests from said active reservation server to said owner event server;

> (h) accepting said purchase requests solely at said local event server and adjusting said Internet inventory only by said owner event server at all times to establish an adjusted Internet inventory;
>
> (i) communicating said accepting and said adjusted Internet inventory from said owner event server to said active reservation server; and
>
> (j) communicating said accepting and confirmation indicia relative thereto from said active reservation system to said Internet consumer.

*Id.*, col. 8, lines 33–67.

In these cases, filed in October 2013, Mr. Mankes has alleged that Vivid Seats and Fandango infringe the '503 patent by operating Internet-based reservation systems for reserving, buying, and selling tickets to movies, sporting events, and concerts. He has admitted that Vivid Seats and Fandango do not themselves perform every step of the claims. He has urged a finding of divided infringement, however, on the asserted ground that local entertainment venues perform the remaining steps.

When these suits began, divided-infringement law was in flux, as reflected in the developments in the case brought by Akamai against Limelight. In 2010, a panel of this court had held that Limelight could not be held liable for direct infringement, applying *Muniauction* and *BMC*. *Akamai I*, 629 F.3d at 1318–22. But in 2011, this court granted en banc review. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 419 F. App'x 989 (Fed. Cir. 2011). In the 2012 en banc decision, *Akamai II*, the court left the rejection of direct infringement in place without revisiting existing standards, 692 F.3d at 1307, 1318–19, but held that inducement under § 271(b) might be established even if no person could be held liable for direct infringement,

*id.* at 1308–18.  That was the state of the law in 2013 when Mr. Mankes brought these suits.  *See Aristrocrat*, 709 F.3d at 1361–64.  The Supreme Court, however, had already invited the Solicitor General to express the views of the United States on Limelight's certiorari petition seeking review of *Akamai II*.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 133 S. Ct. 2879 (2013).

When the Supreme Court granted certiorari, *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 895 (2014), the parties in the present cases, recognizing that the Court might alter the legal landscape, asked the district court for a stay of proceedings, and the court obliged.  Then, in June 2014, the Supreme Court decided *Limelight*, eliminating the independent inducement option and remanding with the observation that "the Federal Circuit will have the opportunity to revisit the § 271(a) question if it so chooses."  *Limelight*, 134 S. Ct. at 2120.  After that decision, the district court in the present cases put off deciding whether to lift the stays until this court, on remand from the Supreme Court in the Akamai-Limelight case, decided whether once again to hear the matter en banc (a process necessary to change pre-existing direct-infringement law) or to refer the matter back to a panel.  Once this court chose the panel-decision route, the district court in the present cases lifted the stays and allowed Vivid Seats and Fandango to file substantive motions on infringement.

Vivid Seats and Fandango moved for judgment on the pleadings, arguing that they could not be liable for direct infringement because, based on the prevailing standard, Mr. Mankes had not alleged enough to attribute the ticket sellers' actions to them.  In his responses, Mr. Mankes noted the various changes in the state of the law, and he continued to argue for changing the law on divided infringement.  In February 2015, in two materially similar opinions, the district court granted the defendants' motions—addressing the merits of both direct infringement

and inducement. The court relied on the prevailing divided-infringement law and found that Mr. Mankes had not "allege[d] facts permitting the inference that defendant[s] direct[] or control[] the theaters in their actions." 15-1500 J.A. 8, 18. The court entered final judgment for Vivid Seats and, after Fandango dismissed its counterclaims without prejudice, entered final judgment for Fandango.

After the district court granted judgment on the pleadings, Vivid Seats filed a motion requesting attorney's fees under 35 U.S.C. § 285. On June 30, 2015, the district court, considering all of the circumstances, found the case not exceptional and therefore denied Vivid Seats' motion.

Meanwhile, on May 13, 2015, before Mr. Mankes filed his opening brief in his (consolidated) appeals from the merits judgments, a panel of this court decided *Akamai III*, applying a divided-infringement standard sufficiently limiting that, as in *Akamai I* and *Akamai II*, the court held Limelight to be entitled to judgment of no direct infringement as a matter of law. *Akamai III*, 786 F.3d at 899–915. In August 2015, however, before briefing was completed, the en banc court vacated that opinion, *see Akamai Techs., Inc. v. Limelight Networks, Inc.*, 612 F. App'x 617 (Fed. Cir. 2015), and decided the case anew in *Akamai IV*. In that decision, the court ruled against Limelight, reversing the district court judgment in its favor and holding it liable for direct infringement based on the articulation of the broadened liability standards quoted above. 797 F.3d at 1022–23. Those standards now apply on this appeal. *See Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 282 (1969).

We have jurisdiction to review the merits and fees judgments under 28 U.S.C. § 1295(a)(1).

DISCUSSION

A

We review the district court's judgments on the pleadings de novo. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). The district court here concluded that Mr. Mankes's operative complaints (amended complaints filed in February and March of 2014) do not plead facts sufficient to support liability for divided infringement. But the district court reached that conclusion based on legal standards that are now too narrow in light of the intervening decision in *Akamai IV*, which sufficiently broadened the standard governing direct-infringement liability for divided infringement that a three-time loss on the issue for Akamai (in *Akamai I*, *II*, and *III*) turned into a win. We conclude that the district court's judgment in this case should be vacated and the case remanded for further proceedings in light of the new articulation of divided-infringement standards.

1

We first reject Vivid Seats' argument (not joined by Fandango) that Mr. Mankes waived a claim of direct infringement. The district court did not find any such waiver; it did not even discuss waiver. The court addressed direct infringement on the merits. We see no error in its having done so.

A sufficient reason, reflected in the district court's silence about waiver, is that Vivid Seats did not expressly argue waiver to the district court. In opposing Vivid Seats' motion for judgment on the pleadings in November 2014, after the June 2014 *Limelight* decision, Mr. Mankes relied on direct infringement—despite having told Vivid Seats by email in March 2014, before *Limelight* rejected the independent inducement theory of *Akamai II*, that he was not pressing direct infringement in his amended

complaint, 15-1500 J.A. 125–26. But Vivid Seats responded to Mr. Mankes's shift in emphasis to direct infringement only by stating that it was "surprising"; Vivid Seats did not argue that Mr. Mankes must be held to have waived a direct-infringement claim. Reply Br. in Support of Def. Vivid Seats Ltd.'s Mot. for Judgment on the Pleadings at 1, *Mankes v. Vivid Seats Ltd.*, No. 5:13-cv-00717 (E.D.N.C. Dec. 11, 2014), ECF No. 40. Without a waiver argument having been directly made by Vivid Seats, we cannot fault the district court for deciding the merits of the direct-infringement contention rather than considering it waived.

Vivid Seats' waiver argument amounts to a new argument on appeal, but it makes no showing of the plain error or miscarriage of justice required to justify reversal based on a new argument. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998). Indeed, it makes no persuasive showing of error at all. Mr. Mankes's February 2014 amended complaint is not by its terms limited to indirect infringement, and Vivid Seats cites no authority treating such a complaint as not encompassing direct infringement. (The amended complaint against Fandango is similar, yet Fandango does not argue that it excludes a direct-infringement contention.) Vivid Seats points to the March 2014 email statement by Mr. Mankes's counsel, but it cites no authority requiring treatment of that email as a forfeiture, at least when, several months later, the Supreme Court in *Limelight* altered the law by eliminating the independent inducement principle of *Akamai II*. And Vivid Seats has identified no way in which it was prejudiced by the district court's considering direct infringement to be in the case, especially in light of the liberal availability of the opportunity to amend pleadings so early in the case. *See Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc). In these circumstances, we find no basis for deeming Mr.

Mankes to have waived his direct-infringement contention against Vivid Seats.

2

On the merits, we conclude that Mr. Mankes's cases warrant reinstatement and a remand for further proceedings in light of the broadened divided-infringement standard articulated by the en banc court in *Akamai IV*. Mr. Mankes has alleged that each step of claim 1 is performed by some entity. Some steps, *i.e.*, (b), (e)–(g), (j), involve operating an online system for selling tickets and communicating sales to the inventory holder; Mr. Mankes has alleged that Vivid Seats and Fandango perform those steps. The remaining steps, *i.e.*, (a), (c)–(d), (h)–(i), involve maintaining an inventory of tickets and updating the amounts in response to local and Internet sales; Mr. Mankes has alleged that local venues perform those steps. In the district court, there was no serious dispute that Mr. Mankes has sufficiently alleged in each case that the identified entities—the defendant Internet entity and the associated local venues—together perform all steps and deal with each other in making the reservation systems work. The dispute was over whether Mr. Mankes has alleged sufficient facts to justify attributing the local venues' actions to Vivid Seats and Fandango under the then-governing standards for such attribution. And the district court held, in agreement with Vivid Seats and Fandango, that Mr. Mankes has not done so because he has not alleged that the local venues either are the defendants' agents or are required by the defendants to take the particular actions that constitute performance of steps (a), (c)–(d), (h)–(i). 15-1500 J.A. 5–8, 15–18.

Although Mr. Mankes noted at oral argument that his claim could not survive under the direct-infringement standards pre-dating *Akamai IV* (as Akamai's direct-infringement claim did not survive under those standards), 15-1500 Oral Arg. at 1:16–2:02, those are no longer

the governing standards. Under *Akamai IV*, the district court's analysis is now insufficient to support rejection of direct-infringement liability here. This court in *Akamai IV* articulated circumstances warranting attribution not previously enumerated in such terms, and it changed an Akamai loss into a Limelight loss on direct infringement on that basis. 797 F.3d at 1023 ("an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance"). *Akamai IV* also is explicit that "other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor," to be assessed "in the context of the particular facts presented." *Id.* In at least those ways, *Akamai IV* makes clear that it does not suffice to reject direct-infringement liability here to conclude that local venues are not agents of the defendants and are not required by the defendants to take the claim steps that they perform.

When the governing legal standards have changed during an appeal, it may be appropriate, in the exercise of our authority under 28 U.S.C. § 2106, to vacate a determination made under superseded standards and to remand for consideration under the new standards and for any proceedings made necessary and appropriate by the new standards. *See, e.g.*, *Patterson v. Alabama*, 294 U.S. 600, 607 (1935) ("We may recognize [an intervening legal] change, which may affect the result, by setting aside the judgment and remanding the case so that the . . . court may be free to act."); *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374–75 (Fed. Cir. 2015) (vacating and remanding attorney's fees case in light of Supreme Court decision changing the legal standard); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 885 (5th Cir. 2014); *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029 (11th Cir. 2014); *McCravy v. Metro. Life Ins. Co.*, 690 F.3d

176, 180–82 (4th Cir. 2012). In the present case, such a disposition is appropriate.

We do not ourselves rule on whether the allegations Mr. Mankes has already made might be interpreted to justify attribution under *Akamai IV*, or what additional factual allegations might do so. Nor are we prepared to find that the record here makes clear that the judgments under review are correct under the newly articulated standards regardless of what facts might now be forthcoming with those standards in mind. Mr. Mankes has already alleged that Vivid Seats and Fandango market their reservation systems to local venues and offer them financial incentives "to perform . . . the other steps of the claimed invention by having the Sellers use the Vivid Seats [and Fandango] reservation system[s]," 15-1500 J.A. 64 ¶¶ 21–22, 87 ¶¶ 18–19, and that local venues' decisions to use the Vivid Seats or Fandango systems initiate commercial arrangements involving continuing communications about sales of tickets to permit the sellers to update their inventories, 15-1500 J.A. 63 ¶ 14, 86 ¶ 14. For such an ongoing interactive commercial relationship, it is plausible that Vivid Seats and Fandango establish rules governing the needed coordination. Given what he already has alleged, Mr. Mankes should have the opportunity to allege facts that allow for a more informed evaluation than is possible on the present record, which was not developed with *Akamai IV* in mind, of whether the defendants' accused activities come within the ambit of the *Akamai IV* "conditions participation" standard or might otherwise justify finding direct-infringement liability for divided infringement.

We do not think it appropriate to rule out at this stage any particular theory of direct infringement, including the joint-enterprise theory and the possibility of other bases of attribution recognized in *Akamai IV*. Nor do we prescribe the course of proceedings required on remand beyond ruling that, given the early stage of this litigation,

Mr. Mankes must at least have the chance to amend his complaints, if he believes such amendment might be useful or the district court determines it is necessary, based on this court's new articulation of divided-infringement standards.  *See Laber*, 438 F.3d at 426.[2] With that exception, we leave it to the district court in the first instance to apply *Akamai IV* to the current complaints, or to newly amended complaints, under the standards that govern whether a complaint suffices to allow litigation to continue past the stage of the opening pleadings.  We also note that it is up to the district court to apply the usual standards for following any rulings that alter the governing law while the case is on remand. We vacate the district court's judgments on the pleadings and remand.

---

[2]    *See also Ladapo v. Target Stores, Inc.*, 615 F. App'x 842, 843 (5th Cir. 2015); *Marrero v. City of Hialeah*, 625 F.2d 499, 512 (5th Cir. 1980); *Rogers v. White Metal Rolling & Stamping Corp.*, 249 F.2d 262, 264 (2d Cir. 1957) (vacatur and amendment warranted when "the controlling law has been altered or clarified during the time the appeal has been pending"); 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam M. Steinman, Federal Practice and Procedure § 1473 (3d ed. 2015) (courts broadly permit amendment to "enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint"); *id.* § 1474 ("Courts also have allowed a party to amend in order to change the nature or theory of the party's claim . . . ."); *cf. Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (change in law may warrant amendment even after scheduling-order deadline).

B

We affirm the denial of Vivid Seats' motion for attorney's fees. We review for abuse of discretion the district court's determination that attorney's fees were not warranted under § 285 because the case is not exceptional. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014). Section 285 permits a court, in an "exceptional" case, to "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Because we vacate and remand judgment on the pleadings and no other relief runs in Vivid Seats' favor, Vivid Seats is no longer the "prevailing party" under § 285. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004); *see Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Vivid Seats agreed at oral argument. 15-1909 Oral Arg. at 1:14–1:45. At this point, § 285 does not authorize the district court to award attorney's fees to Vivid Seats.

In any event, independently of whether legal standards undergo further changes or whether Mr. Mankes eventually loses, we think it clear and worth ruling that the district court committed no error in rejecting an exceptional-case contention even under the law before *Akamai IV*. As the Supreme Court has explained, an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Here, the district court could readily view Mr. Mankes as having reasonably, openly, and in good faith pressed arguments for plausibly result-altering changes in governing legal standards that were demonstrably under active judicial reconsideration in this court and the Supreme Court at the time. While Mr. Mankes's case was pending before the district court, the law on divided infringement remained uncertain, with both our court and the Supreme

Court weighing in on possible changes, and Mr. Mankes's litigation conduct appropriately reflected that shifting legal landscape. Without addressing other situations, we conclude that, in these circumstances, the district court properly determined that this case, to date, has not been exceptional in a way that would justify an award of fees against Mr. Mankes.

## CONCLUSION

For the foregoing reasons, we vacate the district court's judgments dismissing the cases and remand for further proceedings, and we affirm the denial of Vivid Seats' motion for attorney's fees.

No costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**