# United States Court of Appeals for the Federal Circuit

---

**MEDGRAPH, INC.,**
*Plaintiff-Appellant*

**v.**

**MEDTRONIC, INC.,**
*Defendant-Appellee*

---

2015-2019

---

Appeal from the United States District Court for the Western District of New York in No. 6:09-cv-06610-DGL-MWP, Judge David G. Larimer.

---

Decided: December 13, 2016

---

DARIUSH KEYHANI, Meredith & Keyhani, PLLC, New York, NY, argued for plaintiff-appellant.

WAYNE M. BARSKY, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, argued for defendant-appellee. Also represented by KATHERINE QUINN DOMINGUEZ, New York, NY.

---

Before LOURIE, PLAGER, and TARANTO, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Medgraph, Inc. ("Medgraph") appeals from the decision of the United States District Court for the Western District of New York, dismissing with prejudice Medgraph's claims of infringement of U.S. Patent 5,974,124 ("the '124 patent") and U.S. Patent 6,122,351 ("the '351 patent") (collectively, the "asserted patents") against Medtronic, Inc. ("Medtronic"). *See Medgraph, Inc. v. Medtronic, Inc.*, 111 F. Supp. 3d 346, 348 (W.D.N.Y. 2015) ("*Decision*"). For the reasons that follow, we affirm.

## BACKGROUND

Medgraph owns by assignment the asserted patents, directed to a method for improving and facilitating diagnosis and treatment of patients, whereby data relating to "medically important variable[s]," for example, blood sugar levels of a diabetic patient, measured from a patient's body, are uploaded onto a computer and transmitted to a central storage device, from which they can be accessed remotely by medical professionals treating the patient. *See, e.g.*, '124 patent col. 3 ll. 35–46.

Claims 1–15 of the '124 patent are method claims. Claim 1 is representative and reads as follows:

> 1. A method for improving and facilitating diagnosis and treatment of patients having medical conditions requiring long-term profiles of specific variables, said method including the steps of
>
> using at least one measuring device, periodically taking a measurement of at least one medically important variable that has been identified for a patient from a body of said patient;
>
> ensuring said patient is separated from said at least one measuring device after taking each said measurement;

inputting said at least one medically important variable as raw data into a primary computer system after said step of ensuring said patient is separated and recording said raw data in a mass storage device integrated with said primary computer system;

compiling said raw data as data for said patient using the primary computer system, said data representing a history of values for said at least one medically important variable for said patient;

receiving a request for data of one of said patients from by [*sic*] a medical practitioner that is treating said one of said patients; and

outputting requested data for said one of said patients in the form of at least one of a chart and a graph to said medical practitioner;

said step of inputting comprising one of

transferring said raw data to a remote computer comprising an ordinary general purpose personal computer, then transferring said raw data to said primary computer;

telephoning an automatic telephone interface and employing one of speech recognition and touch-tone recognition software to input said raw data into said primary computer; and

telephoning a live receptionist, speaking the raw data to said live receptionist for entry into said primary computer.

*Id.* col. 7 ll. 13–50.

The '351 patent, which is a continuation-in-part of the '124 patent, sets forth a single, similar claim, with differences that are not relevant to this appeal.

Claim 16 of the '124 patent is the corresponding system claim, and reads in relevant part:

> 16.    A system for improving and facilitating diagnosis and treatment of patients having medical conditions requiring long-term profiles of at least one predetermined medically important variable, comprising . . .
>
> means for inputting said at least one predetermined medically important variable as raw data into a primary computer comprising software and hardware enabling said primary computer system to operate as at least one of a web server, a dial-up host, a network server, and a telephone answering and data collection device whereby raw data can be communicated from a remote computer proximate a patient comprising an ordinary general purpose personal computer *and* from an ordinary telephone wherein data is transmitted as one of spoken data and touch-tone data; . . .
>
> means to transmit said requested data in the form of at least one of a chart and graph generated from said data from said primary computer to a remote computer proximate said practitioner whereby said primary computer is one of a web server, a dial-up host, and a network server *and* means to transmit said requested data by facsimile through a fax-modem integrated with said primary computer . . . .

'124 patent col. 10 ll. 24–40, 53–60 (emphases added).

Medtronic manufactures and markets a variety of integrated diabetes management solutions, including the CareLink® Therapy Management System for Diabetes, which integrates CareLink Personal Therapy Manage-

ment Software ("CareLink Personal") for patients and CareLink Pro Diabetes Therapy Management Software ("CareLink Pro") for healthcare professionals (collectively, the "CareLink System"). The CareLink System allows patients to upload data relating to management of their diabetes, including blood glucose readings, to Medtronic's central computer server, where the data are collected and stored in a database so that the patients can keep an online record of the information, and/or share the information remotely with a healthcare provider.

In December 2009, Medgraph sued Medtronic in the United States District Court for the Western District of New York, alleging infringement of all claims of the '124 patent. In October 2010, Medgraph filed an amended complaint to assert that Medtronic also infringed claim 1 of the '351 patent. This appeal arises in part from the fact that Medgraph's suit coincided with a multi-year process of judicial reconsideration by this court sitting en banc and by the Supreme Court of the relevant governing law, in a series of five appellate decisions, which the parties refer to as "the *Akamai* cases."

A year after Medgraph's complaint was filed, this court issued *Akamai I*, where we held that direct infringement of a method claim requires a single party to perform every step of the claimed method and that there can only be joint infringement where the acts of another are attributable to the accused infringer through either an agency relationship or a contractual obligation. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1318–19 (Fed. Cir. 2010) ("*Akamai I*").

In August 2012, Medtronic filed a motion for summary judgment of noninfringement of all claims of the asserted patents, based on, *inter alia*, the grounds that: (1) the CareLink System does not infringe any of the method claims of the asserted patents because those claims require performance of certain steps by patients

and doctors in addition to those performed by Medtronic; and (2) the CareLink System does not infringe claim 16 of the '124 patent because that claim, if properly construed, requires a system that includes both telephonic and computer (*e.g.*, Internet) communication.

Two days after Medtronic filed its motion, this court issued *Akamai II*, an en banc decision, in which we overruled and vacated the panel decision in *Akamai I*. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc) (per curiam) ("*Akamai II*"). In *Akamai II*, we left direct infringement standards in place without reconsidering them, but provided an independent inducement basis for divided infringement liability. *Akamai II*, 692 F.3d at 1317–18. As a result of that decision, Medtronic filed an amended motion for summary judgment, taking *Akamai II* into account. Medgraph submits on appeal that, "in response to *Akamai II*, [it] was compelled to forego its claim of direct infringement and rely, instead, upon a claim for indirect infringement under a theory of inducement." Appellant's Br. 10.

After the district court held a hearing on Medtronic's summary judgment motion, the Supreme Court issued *Akamai III*, reversing *Akamai II* on the issue of induced infringement and remanding the case to this court for possible reconsideration of the standard of divided direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2120 (2014) ("*Akamai III*"). The parties filed supplemental briefs to discuss the effect of *Akamai III* on Medtronic's motion for summary judgment.

The district court awaited a decision from this court on remand from *Akamai III* before ruling on Medtronic's motion. On May 13, 2015, a divided panel of this court issued *Akamai IV*, where we again rejected direct infringement liability for Limelight—as had the initial panel in *Akamai I*—reasoning that Limelight did not

"direct or control" its customers to perform the claimed steps, that its customers were not agents of or contractually obligated to Limelight, and that Limelight's customers were not acting in a "joint enterprise" with Limelight whereby each member could be charged with the acts of the others. *Akamai Techs., Inc v. Limelight Networks, Inc.*, 786 F.3d 899, 915 (Fed. Cir. 2015) ("*Akamai IV*").

On June 29, 2015, the district court in this case issued a decision granting summary judgment of no infringement, applying the law on direct infringement liability as it then stood. In its decision, the district court noted that the legal standard governing direct infringement after *Akamai IV* was the same as under *Akamai II*, which had caused Medgraph to withdraw its claim of direct infringement because "more than one person, i.e., the patient or doctor, neither of whom is an agent of or under contractual obligation to Medtronic, is required to perform all of the steps of the method claims . . . ." *Decision*, 111 F. Supp. 3d at 356 (internal quotation marks omitted). Thus, the district court concluded that there was no infringement because there had not been any "showing that Medtronic itself directly infringed the method claims or that it acted as a 'mastermind' by controlling or directing anyone else's direct infringement." *Id.* (citing *Akamai IV*, 786 F.3d at 904). The district court then entered final judgment of noninfringement on July 2, 2015.

Shortly after the district court's entry of final judgment, this court issued *Akamai V*, an en banc decision where we broadened the circumstances in which others' acts may be attributed to an accused infringer in cases of divided infringement. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) (per curiam) ("*Akamai V*"). We held that, in addition to an agency or contractual relationship, attribution is proper "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes

the manner or timing of that performance." *Id.* Stated otherwise, an actor who is implicated in that way in all of the claimed steps it does not itself perform may be liable as a direct infringer.

Medgraph timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

On appeal, Medgraph argues that: (1) given the change in controlling law, the district court's decision should be vacated and remanded for proceedings in accordance with *Akamai V*; and (2) the district court's finding of noninfringement of system claim 16 was in error because the court improperly construed the claim. We discuss each issue in turn.

## I.

We first consider whether the district court's grant of summary judgment of noninfringement of the asserted method claims should be vacated and remanded in light of *Akamai V*. We review the district court's grant of summary judgment under the law of the regional circuit in which the court sits, here, the Second Circuit. *Classen Immunotherapies, Inc. v. Elan Pharm., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015). The Second Circuit reviews a grant of summary judgment without deference, construing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). Summary judgment may only be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Medgraph argues that the district court's grant of summary judgment of noninfringement was based "solely" on *Akamai IV*, which limited attribution of liability for divided direct infringement to agency and contractual

relationships. Appellant's Br. 14. Medgraph asserts that, because *Akamai V* broadened the scope for attributing third party actions to an accused infringer, the district court did not conduct the relevant inquiries under *Akamai V* and the evidence of record would need to be developed. Thus, in effect, Medgraph argues that Medtronic conditions the patients' and/or doctors' participation in the CareLink System, or receipt of the benefit to the patients and doctors of remote access to patient information, upon their performance of the claimed method steps and establishes the manner or timing of that performance.

Medtronic responds that, under any of the *Akamai* cases, proof of direct infringement required Medgraph to show that some entity or group of entities performed all of the claimed steps, a burden that Medgraph never met. Medtronic maintains that Medgraph never produced evidence of, *inter alia*, the steps that are performed by the patient and doctor. Thus, argues Medtronic, the outcome would remain unchanged if we were to remand this case, because the only relevant inquiry occasioned by the change in law from *Akamai IV* to *V* is the relationship between the accused infringer (itself) and the third parties (patients and doctors) that would allow for attribution, and this inquiry is unnecessary in the absence of evidence of patients and doctors performing the claimed steps.

We agree with Medtronic that a remand is unnecessary in this case. Ordinarily, when the governing legal standards change during an appeal, remand is an appropriate action. *See, e.g.*, *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1310 (Fed. Cir. 2016). However, in this case, Medgraph has not pointed to any evidence that would permit attribution of patient- and doctor-performed steps to Medtronic under the sole standard of *Akamai V* invoked by Medgraph. *See* Appellant's Br. 25–26. A finding of direct infringement requires that "all steps of the claim are performed by or attributable to a single entity."

*Akamai IV*, 786 F.3d at 904. That rule was unaffected by *Akamai V*, which reiterated the rule while broadening the circumstances under which attribution may be proper. 797 F.3d at 1023. Under the *Akamai V* standard invoked by Medgraph, the evidence would have to allow a finding that Medtronic "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner and timing of performance." *Id*. Medgraph has not identified any basis on which it could meet that standard.

The evidence presented to the district court indisputably shows that Medtronic does not condition the use of, or receipt of a benefit from, the CareLink System on the performance of all of Medgraph's method steps. For example, Medtronic does not deny users the ability to use CareLink Personal and CareLink Pro without performance of the claim step of ensuring detachment of the measuring device from the patient after each measurement. Nor does it offer an incentive for such detachment. Indeed, the evidence indicates that Medtronic benefits when patients use its continuous glucose monitoring device, which does not involve ensuring detachment after each measurement. J.A. 1947–48. The evidence also shows that Medtronic freely permits using the CareLink System without performing synchronization, and it denies no benefit to such users for their choices to do so. J.A. 1499, 1503. Patients can freely choose to bring their devices to their physician's office and have their data extracted locally there. J.A. 820–21, 967–68. Patients also can print or email reports and bring them to their medical practitioner. J.A. 907, 923.

This evidence defeats application of the *Akamai V* standard that Medgraph invokes. Discovery was extensive in this case, and Medgraph has identified no avenue of discovery it was denied, or even that it chose not to pursue, that is relevant to applying that standard. Nor has it identified to this court any evidence that is in the

record, or that it has reason to think exists, that would alter the conclusion required by the evidence of record. In these circumstances, we have been furnished no basis for viewing a remand for further proceedings as anything but a pointless prolonging of litigation.

The district court also correctly concluded that Medtronic was not liable under a theory of indirect infringement, because indirect infringement is predicated on direct infringement. That rule was also unaffected by *Akamai V*, so the outcome would, again, not change if we were to vacate and remand.

We thus affirm the district court's grant of summary judgment of noninfringement of the method claims of the asserted patents.

## II.

We next consider whether the district court erred in granting summary judgment of noninfringement of system claim 16 of the '124 patent. Evaluation of summary judgment of noninfringement is a two-part inquiry: first, a court construes the scope and meaning of the asserted patent claims, and then compares the construed claims to the accused product or process. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). We review a district court's ultimate claim constructions *de novo* and any underlying factual determinations involving extrinsic evidence for clear error. *Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015). Here, because the district court relied only on the intrinsic record to construe claim 16, we review the district court's construction *de novo*. *See Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1364, 1368 (Fed. Cir. 2015) (citing *Teva*, 135 S. Ct. at 840–42).

Infringement is a question of fact. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129–30 (Fed. Cir. 2011). As such, a grant of summary judgment of

noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent. *PC Connector Sols., LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005); *see Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39 n.8 (1997).

Medgraph argues that the district court erred in construing the claim limitation "and" to mean "and" instead of "or." Under the district court's construction, claim 16 requires both computer (*e.g.*, Internet) and telephone capabilities for receiving and transmitting data. Medgraph maintains that the written description supports a disjunctive construction because it repeatedly states that the invention transmits data either through "a common network, over telephone lines, *or* over the Internet." *See, e.g.*, '124 patent col. 2 ll. 32–33 (emphasis added).

Medtronic responds that the district court correctly held that "and" means "and" because claim terms are to be given their plain and ordinary meaning. Additionally, Medtronic argues, the written description teaches that the invention possesses both computer and telephonic capabilities, but only *uses* one at a time. *See, e.g.*, *id.* col. 6 ll. 32–41 (describing the "high-tech" and "low-tech" "utilization[s]" of the invention).

We agree with Medtronic that the district court correctly construed the claim. Although we have construed "and" to mean "or" when the specification so requires, *see, e.g.*, *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1361 (Fed. Cir. 2008) ("In light of . . . the specification, . . . this court sustains the trial court's ruling that . . . claim 1's use of *and* means *or*."), those cases are distinct from the present case. For example, in *Ortho-McNeil*, we held that "and" meant "or" because "as used in [the] claim, *and* conjoins mutually exclusive possibilities." 520 F.3d at 1362. Such is not the case here. Telephone and computer capabilities are not mutu-

ally exclusive; the patents themselves teach that the invention may contain both, to serve a diverse set of customers. *See, e.g.*, '124 patent col. 5 ll. 26–28. Indeed, all cases cited by Medgraph, most of them district court cases that are not binding on this court, have a common theme that distinguishes them from this case: the specification *compels* a disjunctive construction for "and." *See, e.g.*, *Merck & Co. v. Teva Pharm. USA, Inc.*, 228 F. Supp. 2d 480, 493–94 (D. Del. 2002) (noting that a conjunctive construction would render tables in the written description meaningless), *aff'd*, 347 F.3d 1367 (Fed. Cir. 2003).

In this case, in contrast, the written description can be interpreted to support either construction. For example, the patent describes the "high-tech" and "low-tech" versions of the invention as both "utilization[s]" of the invention and as "two systems." *See* '124 patent col. 6 ll. 32–41. Likewise, the remainder of the written description contains portions that support a construction of "and" while others support a construction of "or." *Compare, e.g.*, *id.* col. 5 ll. 32–40 (explaining that "it is only for illustration purposes that FIG. 1 shows only one . . . telephone interface" even though "the primary computer may have . . . any number of telephone interfaces") *and id.* fig.1 (showing only one dashed arrow, which suggests that all other arrows, including the one leading to telephone 30, are not optional), *with, e.g.*, *id.* col. 6 ll. 12–14 ("[C]onnection 60 can include a direct network connection, a modem-to-modem connection, *or* an Internet connection." (emphasis added)).

Because the written description does not compel a disjunctive construction for "and," the claim term should be given its plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). We therefore conclude that the district court correctly construed the limitation "and" to mean "and," rather than "or."

It is undisputed that Medtronic's CareLink System is not capable of transmitting patient data by telephone. Because claim 16, as properly construed, requires that the means for receiving and transmitting data include both computer *and* telephonic capabilities, we conclude that the district court correctly granted summary judgment of noninfringement of claim 16 of the '124 patent.

CONCLUSION

We have considered Medgraph's remaining arguments but find them to be unpersuasive. For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED**