NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**QUALITY EDGE, INC.,**
*Plaintiff-Appellee*

**v.**

**ROLLEX CORPORATION,**
*Defendant-Appellant*

---

2017-1005

---

Appeal from the United States District Court for the Western District of Michigan in No. 1:10-cv-00278-JTN, Judge Janet T. Neff.

---

Decided: September 15, 2017

---

MATTHEW J. GIPSON, Price Heneveld LLP, Grand Rapids, MI, argued for plaintiff-appellee.

JOSEPH R. LANSER, Seyfarth Shaw LLP, Chicago, IL, argued for defendant-appellant. Also represented by MICHAEL ROSS LEVINSON, VINCENT MARK SMOLCZYNSKI; BRIAN MICHAELIS, Boston, MA.

---

Before NEWMAN, CHEN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Rollex Corporation appeals the district court's grant of summary judgment of infringement of Quality Edge, Inc.'s U.S. Patent No. 7,137,224. Rollex also appeals the district court's permanent injunction order, dismissal of its invalidity defenses and counterclaim, and denial of its discovery and evidentiary motions. Finally, Rollex seeks reassignment of this case to another district judge on remand. Because we disagree with the district court's claim construction, we vacate the district court's summary judgment of infringement, vacate the permanent injunction, and remand to the district court for further proceedings. We affirm the dismissal of Rollex's invalidity defenses and counterclaim, as well as the district court's discovery and evidentiary rulings, and deny Rollex's request for reassignment.

## BACKGROUND

This case concerns soffit panels ("soffits"), which are used to enclose the eaves of homes and buildings. The '224 patent provides that "[s]offit panels are generally well-known in the art, and serve to cover or enclose the underside of the eaves of homes and other buildings of the type having roof eaves which extend beyond and hang over the outside walls of the building." '224 patent col. 1 ll. 9–13. The '224 patent explains that "the soffit is normally vented to allow outside air to flow into the attic of the building to equalize the attic temperature and pressure with that of the outside environment." *Id.* at col. 1. ll. 16–19. These prior art soffits have certain drawbacks, including the presence of "exposed or visible vents [that] detract[] from the overall appearance of the structure." *Id.* at col. 1 ll. 28–30.

To solve this problem, the '224 patent purports to provide "a vented soffit panel . . . which includes a generally

flat imperforate base portion shaped to enclose at least a portion of the building soffit when mounted in a generally horizontal orientation under an eave." *Id.* at col. 1 ll. 36–40. As illustrated in Figure 1 of the '224 patent, the "vented soffit panel 1 includes a generally flat imperforate base portion 2 shaped to enclose at least a portion of the building soffit . . . when mounted in a generally horizontal orientation under an eave." *Id.* at col. 2 ll. 60–63. "At least one vent channel 5 . . . protrudes upwardly from the base portion 2, and has a generally trapezoidal shape defined by a horizontal imperforate top wall 6, and inclined perforate sidewalls 7 . . . that connect with base portion 2." *Id.* at col. 2 l. 63 – col. 3 l. 1. "The perforate sidewalls 7 are disposed at an acute angle relative to top wall 6 and base portion 2, such that they are hidden from view from a position underneath eave 4." *Id.* at col. 3 ll. 2–5.



FIG. 1

The specification further teaches that, as shown in Figure 2 below, while "each of the sidewalls 7 is perforate, and therefore permits air to pass therethrough," *id.* at col. 3 ll. 41–43, "the top wall 6 of vent channel 5 is substantially imperforate, and therefore does not permit air to pass therethrough," *id.* at col. 3 ll. 33–35.



FIG. 2

The '224 patent includes two independent claims 1 and 42.[1] Claim 1 is reproduced below with the disputed claim limitation emphasized.

1. A vented soffit panel for building roofs and the like of the type having at least one eave with a soffit thereunder; comprising:

a generally flat, imperforate base portion shaped to enclose at least a portion of the soffit when mounted in a generally horizontal orientation under the eave; and

at least one vent channel portion extending along said base portion, and protruding upwardly therefrom; said vent channel portion having a generally trapezoidal lateral cross-sectional shape defined by *a generally horizontal imperforate top wall* and inclined perforate sidewalls with lower ends thereof connected with said base portion in a mutually spaced apart relationship to define a slot therebetween through which ambient air enters into said vent channel and flows through said perforate sidewalls to vent the eave; said perforate

---

[1] Claim 1 is an apparatus claim and claim 42 is a method claim. Because both claims contain the same disputed claim limitation, we only reproduce claim 1 as representative.

> sidewalls being disposed at a predetermined acute angle relative to said top wall and said base portion, whereby when said soffit panel is installed in said generally horizontal orientation, said perforate sidewalls are hidden from view from a position underneath the eave.

*Id.* at col. 5 ll. 10–31 (emphasis added).

Rollex and Quality Edge are direct competitors in the soffit industry. Quality Edge sued Rollex, alleging that Rollex's Stealth Soffit™ infringed the '224 patent.

Pursuant to the district court's local rules, Rollex filed a request for leave to file an early motion for summary judgment of noninfringement. Rollex contended it was entitled to judgment of noninfringement because "[n]o amount of argument or discovery can change the undisputed facts that: (1) each of the claims of the '224 Patent requires that the top wall of the vent channel have no holes, and (2) the top wall of the vent channel in [its] Stealth Soffit™ has holes." J.A. 128.

Quality Edge responded that the disputed claim limitation "a generally horizontal imperforate top wall" required construction. The district court agreed and adopted Quality Edge's proposed construction, interpreting the term to mean "[d]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves." *Quality Edge, Inc. v. Rollex Corp.*, No. 1:10-cv-278, 2012 WL 1790026, at *7 (W.D. Mich. May 16, 2012) ("*Claim Construction Decision*").

Rollex filed a motion for summary judgment of invalidity, arguing that, as construed by the district court, the claims of the '224 patent were indefinite because infringement of the "hidden from a view" limitation depended on an arbitrary location of a viewer, which was not identified in the '224 patent.

Based on its claim construction, the district court granted summary judgment of infringement in favor of Quality Edge, finding that the only claim limitation Rollex challenged—"a generally horizontal imperforate top wall"—was found in the accused Stealth Soffit™. *See Quality Edge, Inc. v. Rollex Corp.*, No. 1:10-cv-278, 2013 WL 3283639, at *6–9 (W.D. Mich. June 28, 2013) ("*Summary Judgment Decision*"). The district court also denied Rollex's cross-motion for summary judgment of indefiniteness. *Id.* at *9–12. The district court also denied several evidentiary and discovery motions, including Rollex's (1) motion for leave to submit an expert declaration in support of its motion for summary judgment on indefiniteness, (2) motion for leave to conduct discovery, (3) motion for leave to submit an expert declaration in opposition to Quality Edge's summary judgment motion on infringement and validity, and (4) motion for leave to supplement its opposition to Quality Edge's summary judgment motion on infringement and validity. *Id.* at *13–16.

After the district court granted summary judgment of infringement, Quality Edge moved for a permanent injunction and for the dismissal of Rollex's invalidity defenses and counterclaim. The district court granted the permanent injunction after finding that each of the factors set forth in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)—irreparable injury, inadequacy of monetary damages, balance of hardships, and public interest—favored injunctive relief. *See Quality Edge, Inc. v. Rollex Corp.*, No. 1:10-cv-278, 2016 WL 4536327, at *1–6 (W.D. Mich. Aug. 31, 2016). The district court also held that Rollex's invalidity counterclaims failed to meet the pleadings standards under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Quality Edge, Inc. v. Rollex Corp.*, No. 1:10-cv-278, 2015 WL 4392980, at *1–2 (W.D. Mich. July 15, 2015) ("*Invalidity Defenses Decision*"). Likewise, the

district court held that Rollex's invalidity defenses failed under the Sixth Circuit's "fair notice" pleading standard. *Id.* at \*3–4. Accordingly, the district court dismissed Rollex's invalidity counterclaim and affirmative defenses without leave to amend.

Rollex appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

We begin by addressing claim construction. We conclude that the district court erred in construing the claim phrase "a generally horizontal imperforate top wall" to mean "[d]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves." *Claim Construction Decision*, 2012 WL 1790026, at \*7 (alteration in original).

We review the district court's ultimate claim construction de novo and review underlying factual findings based on extrinsic evidence for clear error. *See Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015)). Claim construction aims to "ascribe the 'ordinary and customary meaning' to claim terms as they would be understood to a person of ordinary skill in the art at the time of invention." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395 (Fed. Cir. 2016) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

As the district court recognized, the plain and ordinary meaning of "imperforate" is "having no opening or aperture" and "lacking perforations." *Claim Construction*

*Decision*, 2012 WL 1790026, at *5 (citing Webster's Ninth New Collegiate Dictionary 604, 873 (9th ed. 1988)). Nonetheless, the district court did not interpret "generally horizontal imperforate top wall" to require a top wall without openings or apertures. Instead, the district court concluded that the term "generally," which precedes the term "horizontal," also modifies "imperforate," allowing for some holes in the top wall.

The district court correctly noted that "generally" is a ubiquitous term in patent claims, used to signal approximation. The central issue, however, is whether "generally" in the claim phrase modifies only "horizontal" or whether it modifies both "horizontal" and "imperforate." We disagree with the district court's conclusion that "generally" modifies both horizontal and imperforate. We conclude that, in light of the claims and specification of the '224 patent, the more reasonable reading of the claim term "generally horizontal imperforate" is that the term "generally" only modifies "horizontal" and does not modify the strict boundary of "imperforate."

The absolute nature of the claim term "imperforate" supports our conclusion. It makes little sense as a technical matter to have a "generally" imperforate wall. A wall is either perforate (with holes) or imperforate (without holes). Once a wall is "generally" imperforate, it is actually perforate.

Claim 23, which depends from claim 1, further supports our construction. As we have recognized, "[a]lthough each claim is an independent invention, dependent claims can aid in interpreting the scope of claims from which they depend." *Laitram Corp. v. NEC Corp.*, 62 F.3d 1388, 1392 (Fed. Cir. 1995). Here, dependent claim 23 recites "said imperforate top wall." '224 patent at col. 6 ll. 40–41. It does not recite "said generally imperforate top wall." This suggests that "generally" in claim 1 does not modify "imperforate."

Our construction is also consistent with the patent specification, which is "the single best guide to the meaning of a disputed term" and "[u]sually . . . is dispositive." *Phillips*, 415 F.3d at 1315. In all but one instance, the specification describes "a horizontal imperforate top wall" without the use of "generally" to modify either term in the claim phrase. *See* '224 patent, Abstract, col. 1 ll. 42–43, col. 2 l. 66. Only once does the specification use the phrase "a generally horizontal imperforate top wall." *See id.* at col. 1 l. 59. But the specification more specifically explains that the top wall has a "generally horizontal orientation" when installed under an eave. *See id.* at col. 3 ll. 39–40. This signals that the inventors intended the term "generally" in the claims to refer only to the "horizontal" orientation of the top wall. Nowhere does the specification describe or depict a top wall with holes or perforations.

The district court emphasized that the specification states that the top wall "is substantially imperforate." *Claim Construction Decision*, 2012 WL 1790026, at *6 (citing '224 patent col. 3 ll. 34–36). The district court concluded that the specification's use of the term "substantially imperforate" "clearly expresses that the top wall may have perforations" and "[t]o find otherwise blindly disregards the presence and purpose of the modifiers 'substantially' and 'visually detectable.'" *Id.* We respectfully disagree.

Quality Edge and the district court overlook the remainder of this sentence in the specification, which recites that the top wall "is substantially imperforate, and *therefore does not permit air to pass therethrough*." '224 patent col. 3 ll. 34–35 (emphasis added). The patent therefore qualifies "substantially imperforate" by stating that the top wall must not permit air to pass through. Logically, if the top wall were substantially imperforate such that it had some holes, as Quality Edge argues, the

top wall would permit air to pass through, which contradicts the express definition provided in the specification.

Additionally, the beginning of this very sentence explains that the description that follows describes the invention as illustrated in Figures 1–3 of the patent. *Id.* at col. 3 ll. 33–34 ("In the example illustrated in FIGS. 1–3, the top wall 6 . . . is substantially imperforate."). But as can be seen in each of the figures, the top wall has no perforations, which is consistent with the specification's disclosure of an imperforate top wall. Accordingly, we conclude that the specification of the '224 patent more reasonably supports the conclusion that "imperforate," as used in the claims, requires a top wall that has no holes or perforations.

We also disagree with the grammatical argument advanced by the district court. The district court emphasized that because an earlier limitation in claim 1—"a generally flat, imperforate base portion"—contains a comma, the lack of a comma between "horizontal" and "imperforate" in the disputed claim limitation indicates that "generally" modifies both "horizontal" and "imperforate," such that the top wall is both generally horizontal and generally imperforate. *Claim Construction Decision*, 2012 WL 1790026, at *4. As the district court recognized, however, there is no hard and fast grammatical rule that placing a comma between two adjectives means that the adverb does not modify both adjectives. *Id.* Similarly, there is no hard and fast grammatical rule that not placing a comma between two adjectives means that the adverb modifies both adjectives. This is demonstrated by the fact that the comma in the phrase "a generally flat, imperforate base portion" is not used consistently in the specification. The specification repeatedly uses the same phrase as the claims, referring to "a generally flat imperforate base portion," but without a comma. *See* '224 patent, Abstract, col. 1 ll. 37–38, col. 1 ll. 52–53, col. 2 ll. 60–61. In fact, the only two instances in which the

comma appears in the phrase are in independent claims 1 and 42. Thus, we conclude that the lack of a comma between the adjectives "horizontal" and "imperforate" does not demonstrate that "generally" modifies both "horizontal" and "imperforate."

For these reasons, we agree with Rollex that the correct construction of the phrase is "a top wall that has a generally horizontal orientation, when the vented soffit panel is installed under an eave, and does not include any perforations therein." J.A. 373.

Because we find that the asserted claims require that the top wall not include any perforations and there is no dispute that Rollex's accused Stealth Soffit™ is inundated with perforations in its top wall, we vacate the district court's summary judgment of infringement and its permanent injunction order. We do not reach Rollex's argument that the claims as construed by the district court are indefinite as it is moot in light of our claim construction.

## II.

We next turn to Rollex's arguments regarding the district court's denial of its invalidity counterclaim and affirmative defenses. We affirm the district court's rulings.

We apply the law of the regional circuit, in this case the Sixth Circuit, when reviewing a district court's ruling on a motion to dismiss for failure to state a claim or a motion for leave to amend. *See CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1354 (Fed. Cir. 2009). In the Sixth Circuit, a district court's decision to grant a motion to dismiss for failure to state a claim is reviewed de novo, *see Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016), and its denial for leave to amend is reviewed for an abuse of

discretion, *see Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013).

In its Answer to Quality Edge's Complaint, Rollex asserted a defense that "[t]he '224 Patent . . . is invalid because it does not comply with the statutory requirements of patentability enumerated in, *inter alia*, 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 132." J.A. 237. Rollex also counterclaimed, alleging that "[t]he '224 Patent . . . is invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35, including, *inter alia*, 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 132." J.A. 240 ¶ 12. At no point during the litigation did Rollex allege any facts in support of its invalidity counterclaim or defenses.

The district court held that the *Twombly/Iqbal* pleading standards applied to Rollex's counterclaims and that the Sixth Circuit's "fair notice" standard applied to its defenses. *See Invalidity Defenses Decision*, 2015 WL 4392980, at *1.[2] Under these standards, the district court dismissed Rollex's counterclaims and defenses, finding that "[t]he counterclaim provides no further facts or context to identify the claims of invalidity beyond merely citing sections of the patent statute" and that its "counterclaim falls far short of the *Iqbal* and *Twombly* pleading standard." *Id.* at *1, *2. With respect to its defenses, the district court found that "Rollex's barebones, boilerplate affirmative defenses do not provide Quality Edge 'fair notice' of the nature of the defenses." *Id.* at *3. The court therefore dismissed the counterclaim and defenses without leave to amend because Rollex's "undue delay, undue prejudice and futility all weigh[ed] against leave to

---

[2]    Rollex does not contest the district court's ruling regarding the pleading requirements for its invalidity counterclaim or defenses, and therefore we need not reach this aspect of the district court's decision.

amend" and because "Rollex's motion [was] belated, wasteful of resources, and unduly prejudicial to Quality Edge." *Id.* at \*4.

Upon reviewing the record, we find no abuse of discretion in the district court's dismissal of Rollex's invalidity counterclaim and defenses. Rollex's invalidity counterclaim merely recites various sections of the patent statute with no supporting facts, and its defenses are similarly boilerplate without factual support. We note that the district court on multiple occasions warned Rollex that its counterclaim and defenses were insufficient and required supplementation, but to no avail. At the outset of the litigation, Rollex pursued only its non-infringement case and only belatedly asserted indefiniteness after the district court's claim construction, which the district court fortuitously addressed. Despite the district court's continued attempts to ascertain Rollex's other invalidity positions, Rollex failed to present them or request leave to further amend its invalidity counterclaim and defenses until after the district court entered summary judgment on infringement.

While Federal Rule of Civil Procedure 15(a)(2) provides that the district court "should freely give leave [to amend] when justice so requires," the Sixth Circuit has recognized that a district court may deny leave due to "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). Here, we cannot say that the district court abused its discretion in concluding that Rollex's conduct constitutes undue delay and prejudice, supporting the district court's discretion to dismiss its invalidity counterclaim and defenses without leave to

amend.  Accordingly, we affirm the district court's dismissal of Rollex's invalidity counterclaim and defenses.

## III.

Lastly, Rollex seeks reassignment of this case to a different district judge on remand.  We deny such extraordinary relief.

A request for reassignment is not unique to the patent laws, but is procedural in nature.  We therefore review such a request under the law of the regional circuit, here the Sixth Circuit.  *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).  The Sixth Circuit has held that reassignments are "an extraordinary power and should rarely be invoked . . . [and should be] made infrequently and with the greatest reluctance."  *Armco, Inc. v. United Steelworkers of Am., AFL-CIO, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002) (citation omitted).  Factors relevant to considering reassignment include:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.*

Rollex believes that the district court will not be impartial on remand based on its denial of Rollex's discovery requests and submission of expert testimony on summary judgment, its denial of Rollex's evidence at the permanent injunction stage, its striking of its invalidity counterclaim and affirmative defenses, and its chastise-

ment of Rollex based on its change of its litigation positions and delay of litigation.

We find no principled reason for reassigning this case. As the district court properly held, Rollex shaped the course of this case from the beginning, conceding that the single dispositive issue was the claim construction of "a generally horizontal imperforate top wall" and in turn noninfringement based on this single claim limitation. Rollex agreed that this issue could be resolved on summary judgment without discovery. We note that we have now adopted Rollex's claim construction, which will be the proper construction for the infringement analysis on remand. Rollex also agreed that discovery during the injunction stage was unnecessary. The district court merely relied on Rollex's representations, which formed the course of the litigation.

Considering Rollex's concessions, we conclude that the district court did not abuse its discretion in denying Rollex's motions for discovery and additional evidence. Likewise, for the reasons stated earlier, the district court did not err in dismissing Rollex's unsupported invalidity counterclaim and defenses. Accordingly, we have no reason to believe that the district judge will have substantial difficulty in disregarding her previous views and findings on remand. Moreover, reassignment would entail waste and duplication of the parties' and the district court's resources in this already prolonged litigation. We therefore deny Rollex's request for reassignment.

## IV.

We have considered Rollex's additional arguments and find them unpersuasive. In sum, we vacate the district court's claim construction of "a generally horizontal imperforate top wall" and construe the term to mean "a top wall that has a generally horizontal orientation, when the vented soffit panel is installed under an eave, and does not include any perforations therein." As a

result, we vacate the district court's summary judgment of infringement and its permanent injunction order. We affirm the district court's dismissal of Rollex's invalidity counterclaim and defenses and deny Rollex's request for reassignment. Finally, we remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, REMANDED**

COSTS

No costs.