# United States Court of Appeals for the Federal Circuit

---

**AKAMAI TECHNOLOGIES, INC.,
THE MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,**
*Plaintiffs-Appellants*

**v.**

**LIMELIGHT NETWORKS, INC.,**
*Defendant-Cross-Appellant*

---

2009-1372, 2009-1380, 2009-1416, 2009-1417

---

Appeals from the United States District Court for the District of Massachusetts in Nos. 06-CV-11585, 06-CV-11109, Judge Rya W. Zobel.

---

Decided: August 13, 2015

---

SETH P. WAXMAN, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by THOMAS G. SAUNDERS, THOMAS G. SPRANKLING; MARK C. FLEMING, ERIC F. FLETCHER, LAUREN B. FLETCHER, BROOK HOPKINS, Boston, MA; DAVID H. JUDSON, Law Offices of David H. Judson, Dallas, TX; DONALD R. DUNNER, ELIZABETH D. FERRILL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC; JENNIFER S. SWAN, Palo Alto, CA; ROBERT S. FRANK, JR., G. MARK EDGARTON, CARLOS

PEREZ-ALBUERNE, Choate, Hall & Stewart, LLP, Boston, MA.

AARON M. PANNER, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, DC, argued for defendant-cross-appellant. Also represented by JOHN CHRISTOPHER ROZENDAAL, MICHAEL E. JOFFRE; MICHAEL W. DE VRIES, ALLISON W. BUCHNER, Kirkland & Ellis LLP, Los Angeles, CA; YOUNG JIN PARK, New York, NY; DION D. MESSER, Limelight Networks, Inc., Tempe, AZ.

JEFFREY I.D. LEWIS, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY, for amicus curiae American Intellectual Property Law Association. Also represented by KRISTIN M. WHIDBY, Washington, DC; LISA K. JORGENSON, American Intellectual Property Law Association, Arlington, VA.

SCOTT A.M. CHAMBERS, Porzio, Bromberg & Newman, P.C., Washington, DC, for amicus curiae Biotechnology Industry Organization. Also represented by CAROLINE COOK MAXWELL; HANSJORG SAUER, Biotechnology Industry Organization, Washington, DC.

CHARLES R. MACEDO, Amster Rothstein & Ebenstein LLP, New York, NY, for amicus curiae Broadband iTV, Inc. Also represented by JESSICA CAPASSO.

PAUL H. BERGHOFF, McDonnell, Boehnen, Hulbert & Berghoff, LLP, Chicago, IL, for amicus curiae Intellectual Property Owners Association. Also represented by PHILIP S. JOHNSON, Johnson & Johnson, New Brunswick, NJ; KEVIN H. RHODES, 3M Innovative Properties Co., St. Paul, MN; HERBERT C. WAMSLEY, Intellectual Property Owners Association, Washington, DC.

CARTER G. PHILLIPS, Sidley Austin LLP, Washington, DC, for amicus curiae Pharmaceutical Research and

Manufacturers of America. Also represented by JEFFREY P. KUSHAN, RYAN C. MORRIS; DAVID E. KORN, Pharmaceutical Research and Manufacturers of America, Washington, DC; DAVID R. MARSH, LISA A. ADELSON, Arnold & Porter, LLP, Washington, DC; ROBERT P. TAYLOR, MONTY AGARWAL, San Francisco, CA.

DEMETRIUS TENNELL LOCKETT, Townsend & Lockett, LLC, Atlanta, GA, for amici curiae Nokia Technologies Oy and Nokia USA Inc.

DONALD R. WARE, Foley Hoag LLP, Boston, MA, for amicus curiae The Coalition for 21st Century Medicine. Also represented by MARCO J. QUINA, SARAH S. BURG.

-------------------

Before PROST, *Chief Judge*, NEWMAN, LOURIE, LINN, DYK, MOORE, O'MALLEY, REYNA, WALLACH, and HUGHES, *Circuit Judges*.[*]

PER CURIAM.

This case was returned to us by the United States Supreme Court, noting "the possibility that [we] erred by too narrowly circumscribing the scope of § 271(a)" and suggesting that we "will have the opportunity to revisit the § 271(a) question . . . ." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2119, 2120 (2014). We hereby avail ourselves of that opportunity.

Sitting en banc, we unanimously set forth the law of divided infringement under 35 U.S.C. § 271(a). We conclude that, in this case, substantial evidence supports the jury's finding that Limelight Networks, Inc. ("Limelight")

---

[*] Circuit Judges Taranto, Chen, and Stoll did not participate.

directly infringes U.S. Patent 6,108,703 (the "'703 patent") under § 271(a). We therefore reverse the district court's grant of judgment of noninfringement as a matter of law.

## I. DIVIDED INFRINGEMENT

Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity. *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007). Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement. We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.[1]

To determine if a single entity directs or controls the acts of another, we continue to consider general principles of vicarious liability.[2] *See BMC*, 498 F.3d at 1379. In the

---

[1]    To the extent that our decision in *Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, 614 F.3d 1367 (Fed. Cir. 2010) is inconsistent with this conclusion, that aspect of *Golden Hour* is overruled.

[2]    We note that previous cases' use of the term "vicarious liability" is a misnomer. Restatement (Third) of Torts: Apportionment of Liability § 13 (2000). In the context of joint patent infringement, an alleged infringer is not liable for a third party's commission of infringement—rather, an alleged infringer is responsible for method steps performed by a third party. Accordingly, we recognize that vicarious liability is not a perfect analog. Nevertheless, as both vicarious liability and joint patent infringement discern when the activities of one entity are

past, we have held that an actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method. *See BMC*, 498 F.3d at 1380–81. We conclude, on the facts of this case, that liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance. *Cf. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (stating that an actor "infringes vicariously by profiting from direct infringement" if that actor has the right and ability to stop or limit the infringement). In those instances, the third party's actions are attributed to the alleged infringer such that the alleged infringer becomes the single actor chargeable with direct infringement. Whether a single actor directed or controlled the acts of one or more third parties is a question of fact, reviewable on appeal for substantial evidence, when tried to a jury.

Alternatively, where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor. *See* Restatement (Second) of Torts § 491 cmt. *b* ("The law . . . considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest."). A joint enterprise requires proof of four elements:

    (1) an agreement, express or implied, among the members of the group;

---

attributable to another, we derive our direction or control standard from vicarious liability law. *See BMC*, 498 F.3d at 1379.

    (2) a common purpose to be carried out by the group;

    (3) a community of pecuniary interest in that purpose, among the members; and

    (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id.* § 491 cmt. *c.* As with direction or control, whether actors entered into a joint enterprise is a question of fact, reviewable on appeal for substantial evidence. *Id.* ("Whether these elements exist is frequently a question for the jury, under proper direction from the court.").

We believe these approaches to be most consistent with the text of § 271(a), the statutory context in which it appears, the legislative purpose behind the Patent Act, and our past case law. Section 271(a) is not limited solely to principal-agent relationships, contractual arrangements, and joint enterprise, as the vacated panel decision held.[3] Rather, to determine direct infringement, we consider whether all method steps can be attributed to a single entity.

## II. APPLICATION TO THE FACTS OF THIS CASE

Today we outline the governing legal framework for direct infringement and address the facts presented by this case. In the future, other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor. Going forward, principles of attribution are to be considered in the context of the particular facts presented.

---

[3] To the extent our prior cases formed the predicate for the vacated panel decision, those decisions are also overruled.

The facts of this case need not be repeated in detail once again, but the following constitutes the basic facts. In 2006, Akamai Technologies, Inc. ("Akamai") filed a patent infringement action against Limelight alleging infringement of several patents, including the '703 patent, which claims methods for delivering content over the Internet. The case proceeded to trial, at which the parties agreed that Limelight's customers—not Limelight—perform the "tagging" and "serving" steps in the claimed methods. For example, as for claim 34 of the '703 patent, Limelight performs every step save the "tagging" step, in which Limelight's customers tag the content to be hosted and delivered by Limelight's content delivery network. After the close of evidence, the district judge instructed the jury that Limelight is responsible for its customers' performance of the tagging and serving method steps if Limelight directs or controls its customers' activities. The jury found that Limelight infringed claims 19, 20, 21, and 34 of the '703 patent. Following post-trial motions, the district court first denied Limelight's motion for judgment of noninfringement as a matter of law, ruling that Akamai had presented substantial evidence that Limelight directed or controlled its customers. After we decided *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), the district court granted Limelight's motion for reconsideration, holding as a matter of law that there could be no liability.

We reverse and reinstate the jury verdict. The jury heard substantial evidence from which it could find that Limelight directs or controls its customers' performance of each remaining method step, such that all steps of the method are attributable to Limelight. Specifically, Akamai presented substantial evidence demonstrating that Limelight conditions its customers' use of its content delivery network upon its customers' performance of the tagging and serving steps, and that Limelight establishes the manner or timing of its customers' performance. We

review the evidence supporting "conditioning use of the content delivery network" and "establishing the manner or timing of performance" in turn.

First, the jury heard evidence that Limelight requires all of its customers to sign a standard contract. The contract delineates the steps customers must perform if they use the Limelight service. These steps include tagging and serving content. As to tagging, Limelight's form contract provides: "Customer shall be responsible for identifying via the then current [Limelight] process all [URLs] of the Customer Content to enable such Customer Content to be delivered by the [Limelight network]." J.A. 17807. In addition, the contract requires that Limelight's customers "provide [Limelight] with all cooperation and information reasonably necessary for [Limelight] to implement the [Content Delivery Service]." *Id.* As for the serving step, the form contract states that Limelight is not responsible for failures in its content delivery network caused by its customers' failure to serve content. *See id.* If a customer's server is down, Limelight's content delivery network need not perform. Thus, if Limelight's customers wish to use Limelight's product, they must tag and serve content. Accordingly, substantial evidence indicates that Limelight conditions customers' use of its content delivery network upon its customers' performance of the tagging and serving method steps.

Substantial evidence also supports finding that Limelight established the manner or timing of its customers' performance. Upon completing a deal with Limelight, Limelight sends its customer a welcome letter instructing the customer how to use Limelight's service. In particular, the welcome letter tells the customer that a Technical Account Manager employed by Limelight will lead the implementation of Limelight's services. J.A. 17790. The welcome letter also contains a hostname assigned by Limelight that the customer "integrate[s] into [its] webpages." J.A. 17237; 17790. This integration process

includes the tagging step. Moreover, Limelight provides step-by-step instructions to its customers telling them how to integrate Limelight's hostname into its webpages if the customer wants to act as the origin for content. J.A. 17220. If Limelight's customers do not follow these precise steps, Limelight's service will not be available. J.A. 587 at 121:22–122:22. Limelight's Installation Guidelines give Limelight customers further information on tagging content. J.A. 17791. Lastly, the jury heard evidence that Limelight's engineers continuously engage with customers' activities. Initially, Limelight's engineers assist with installation and perform quality assurance testing. J.A. 17790. The engineers remain available if the customer experiences any problems. J.A. 17235. In sum, Limelight's customers do not merely take Limelight's guidance and act independently on their own. Rather, Limelight establishes the manner and timing of its customers' performance so that customers can only avail themselves of the service upon their performance of the method steps.

We conclude that the facts Akamai presented at trial constitute substantial evidence from which a jury could find that Limelight directed or controlled its customers' performance of each remaining method step. As such, substantial evidence supports the jury's verdict that all steps of the claimed methods were performed by or attributable to Limelight. Therefore, Limelight is liable for direct infringement.

## III. Conclusion

At trial, Akamai presented substantial evidence from which a jury could find that Limelight directly infringed the '703 patent. Therefore, we reverse the district court's grant of judgment of noninfringement as a matter of law. Because issues in the original appeal and cross-appeal remain, we return the case to the panel for resolution of all residual issues consistent with this opinion.